JACOB H. LESHER AND JOHN L. BOBO v. JOHN LOUDON.

*Principal and agent—Assumpsit—Money had and received.*

1. Testimony tending to show that the manager of a merchant tailoring establishment, who had been forbidden by the proprietor to make purchases without express authority, informed his principal that certain goods were required, and that there was an agent in town representing a good house through whom they could be ordered, and that the principal answered that the agent knew what was required better than he did, is sufficient, if believed, to authorize a jury to draw the inference that the agent was authorized to make the purchase.

2. When goods are purchased by another person without authority, and are brought into a merchant's store without his knowledge or consent, and placed upon his shelves, there must be some evidence that he sold the goods and received the money therefor in order to make him liable to the vendor in an action for money had and received to his use.

Error to Mecosta. (Palmer, J.) Argued February 6, 1891. Decided February 27, 1891.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*F. A. Mann,* for appellants.

*Dumon & Cogger,* for defendant.

CHAMPLIN, C. J. The plaintiffs are merchants, doing business at Chicago, Ill., under the firm name of J. H. Lesher & Co. The defendant resides in Big Rapids, Mich., and in August, 1888, was engaged in merchant tailoring, and occupied a place of business in the latter city. He was also employed as a railroad agent, and employed one John Gilmour, who was a tailor, as the manager of his merchant tailoring store, and cutter. Gilmour had, previous to August, 1888, made purchases of goods for the store, but had been forbidden by Louden to make any further orders or purchases unless expressly authorized by Loudon. About a week prior to August 15, 1888, Mr. Clark, a traveling agent for plaintiffs, called at Loudon's store, and there found Gilmour, who gave him an order for trimmings. Clark forwarded the order to plaintiffs, who filled the same, and billed them to Gilmour. The goods were received in the store between the 19th and 23d of August, 1888. The date of the bill was August 15, and it amounted to $102.92.

On February 13, 1889, plaintiffs wrote to defendant, saying that—

"John Gilmour, of Big Rapids, purchased $102.92 of us, and claims he did so as your agent. If this is the case, kindly favor us with the amount as soon as possible, as it is long past due, and oblige,
                    "Yours truly,
                        "J. H. LESHER & Co."

On February 15, 1889, Loudon replied, acknowledging receipt of the letter, and saying that he never authorized Gilmour to make the purchase; that he bought all of his

goods himself, and had invoice of goods made to himself; that Gilmour left his employ August 24; and further stating that, if he found any of plaintiffs' goods their bill referred to, he would see what could be done towards payment, and that at that time he could do nothing with it. This was followed by a letter from plaintiffs, dated March 7, 1889, saying that they had received a letter from the railroad, stating that the package was delivered to and receipted by Loudon's regular drayman, and that they inferred that the goods had been received and used by Loudon, and requesting pay for them. Afterwards they brought suit, declaring upon the common counts in *assumpsit*.

The plaintiffs' theory was that the defendant was the real principal, and that Gilmour was his agent in purchasing the goods, and that, upon discovery of the real principal, they could hold him as the real purchaser. They also contended that if defendant received the goods, placed them in his store, and sold or used them, he would be liable to plaintiffs for their reasonable worth as for so much money had and received to their use. To sustain this theory they introduced Gilmour as a witness, who testified that he was in the employ of defendant in August, 1888, as "cutter, and superintending his store, and managing it all through;" that Mr. Clark, the agent of plaintiffs, came into the store, and asked him if he wanted to buy trimmings, and he told him he did; that he had a talk with Loudon before the goods were bought that day, and—

"Told him that we required trimmings, and there was an agent in town representing a good house, and he says: 'John, you know best what you require yourself, better than I do.' Then, of course, that gave me liberty to go ahead."

That the goods ordered were billed in the name of

John Gilmour, were received and receipted for by Loudon's drayman, were brought and delivered into the store of defendant, and there the package was opened, marked with defendant's private sale mark, and placed upon his shelves. Gilmour also testified that these goods were purchased for John Loudon.

The defendant introduced testimony tending to prove that he did not give Gilmour any authority to purchase the goods; that no such goods were received and placed upon the shelves in his store, or had ever come to his possession.

The court took the case from the jury upon the ground that there was no testimony which tended to support the plaintiffs' case.

If Gilmour was entitled to credit (and that was for the jury to determine), there was testimony which, if uncontradicted, would have entitled the plaintiffs to a verdict. Gilmour, it is true, testified that he had been expressly forbidden by Loudon to purchase goods before the order in question was given, but he claims that he was authorized by Loudon to make this order. He states what was said between him and Loudon upon the subject, and it was for the jury to draw the inference from the facts and circumstances and what was said whether he was authorized or not. The manager, according to this testimony, who had been forbidden to make purchases without express authority, said to his principal: " We require trimmings, and there is an agent in town representing a good house;" and Loudon says: " John, you know best what you require yourself, better than I do." Here were the needs of the business represented by the manager to his principal, the fact that there was a present opportunity to obtain the supply, and the reference of the matter to the manager by the principal. I think that this testimony would have authorized the jury to draw the infer-

ence that Loudon did authorize Gilmour to make the purchase.

Upon the other branch of the case I agree with the circuit judge that, when goods are purchased by another person without authority, and are brought into a merchant's store without his knowledge. or consent, and placed upon his shelves, there must be some evidence that he sold and received the money for such goods, in order to make him liable for money had and received to plaintiffs' use.

The judgment must be reversed, and a new trial granted.

MORSE, MCGRATH, and GRANT, JJ., concurred. LONG, J., did not sit.